UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHING-YI LIN, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 1:19-cv-11517-ADB |
| | * |
| TIPRANKS, LTD., | * |
| | * |
| Defendant. | * |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

In this defamation suit, Plaintiff Ching-Yi Lin ("Lin") alleges that Defendant TipRanks, Ltd. ("TipRanks") wrongfully ranked her extremely low on its financial analyst performance website, which prevented her from obtaining employment as an analyst for almost three years. [ECF No. 1-1 ("Complaint" or "Compl.") at 8–11]. Lin brought this suit in the Massachusetts Superior Court for Suffolk County on April 17, 2019 and on July 11, 2019, TipRanks removed the case to this Court. [ECF No. 1 at 1]. TipRanks then moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). [ECF No. 10]. Lin opposed the motion to dismiss. [ECF No. 14]. For the reasons stated below, TipRanks' motion to dismiss [ECF No. 10] is GRANTED.

**I.  BACKGROUND**

This summary draws from allegations in the Complaint and attestations in the affidavits submitted by the parties. Lin was domiciled in Massachusetts from October 2015 until August 2016, although she now resides in New York. [ECF No. 14-2 ¶¶ 1, 3, 4].[1] Lin is an equity

---

[1] There are two paragraphs numbered (3) in Lin's Affidavit.

research analyst who advises investors on whether to purchase or sell shares of biotech companies. [Id. ¶ 2]. TipRanks is an Israeli technology company that operates its website exclusively from Israel. [ECF No. 11 at 1]. TipRanks "aggregates and analyzes the financial data that is publicly available online to provide a data-driven measure of accuracy based on the statistical ability of an expert to generate profits from investment recommendations." [ECF No. 12 ¶ 2]. TipRanks uses this information to rank financial analysts based on their performance. These rankings are then "ma[de] available for free on its website," where they can be accessed anywhere and viewed by anyone, including in Massachusetts and by Massachusetts residents. [Id. ¶ 3]. Visitors accessing TipRanks' website also have the option to subscribe to TipRanks' premium services for an annual fee, which provides full access to TipRanks' stock market research tools. [ECF No. 14-1 ¶ 6]. TipRanks is not registered to do business in Massachusetts, has no employees in Massachusetts, does not maintain an office or own any personal or real property in Massachusetts, and does not derive "substantial revenue" from business in Massachusetts. [ECF No. 11 at 3].

As of 2018, Lin was ranked 4,771 out of 4,832 analysts on TipRanks' website. [Compl. at 9]. Lin contends that her ranking was "erroneous" because it was based on two stocks that she had never covered and on stock at a company that did not yet exist at the time her ranking was published. [ECF No. 14-2 ¶ 9].[2] Between November 2015 and August 2016, Lin "applied to at least 100 jobs in the Boston area," with no success. [Id. ¶¶ 4–8]. She "would have a series of favorable interviews and then, mysteriously, find herself dropped by companies to which she had tendered applications." [Compl. at 9]. In 2018, she learned of her poor ranking on TipRanks and shortly thereafter requested that TipRanks remove her ranking. [Id. at 10]. TipRanks agreed

---

[2] There are two paragraphs numbered (9) in Lin's Affidavit.

to remove Lin's ranking from its website. [Id.]. Once Lin's ranking no longer appeared in a Google search for her name, she received a job offer within a month. [ECF No. 14-2 ¶ 9]. Lin now claims that "the erroneous statements on the TipRanks website . . . damage[d] [her] reputation in the stock analyst community" and were "sufficient to deter potential employers from hiring [her]." [Compl. at 10]. This, in turn, "caused [her] economic loss, and prejudiced her profession, all to her damage." [Id.].

## II. STANDARD OF REVIEW

Lin bears the burden of establishing that specific jurisdiction exists over TipRanks. A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (citing Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . , the 'prima facie' standard governs its determination." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, the plaintiff must proffer "evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." A Corp., 812 F.3d at 58 (quoting Prairie Eye Ctr., 530 F.3d at 26). "[P]laintiffs may not rely on unsupported allegations in their pleadings," and are instead "obliged to adduce evidence of specific facts" supporting jurisdiction. Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (first quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992), then quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)). The Court takes as true whatever properly documented facts a plaintiff proffers, construes those facts in the light most favorable to the plaintiff, and considers facts put forward by the defendant to the extent they are uncontradicted. See Prairie Eye Ctr., 530 F.3d at 26; Platten, 437 F.3d at 134.

## III. DISCUSSION

"To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2015) (citing Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)). The Due Process Clause of the Fourteenth Amendment allows a state court to exercise personal jurisdiction over a nonresident only where the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted). Massachusetts also articulates requirements for when courts may exercise personal jurisdiction over nonresidents through its long-arm statute. Because "the long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017); see also Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015) ("The requirements of the Massachusetts long-arm statute are similar to—although not necessarily the same as—those imposed by the Due Process Clause.").

### A. Massachusetts Long-Arm Statute

Section 3(c) of the Massachusetts long-arm statute allows for the exercise of "personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . causing tortious injury by an act or omission in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(c). Courts have liberally construed section 3(c) in cases involving out-of-state internet postings. See, e.g., Abiomed, Inc., v. Turnbull, 379 F. Supp. 2d 90, 92 (D. Mass. 2005).

"The 'arising from' clause in [the long-arm statute] is . . . generously construed in favor of asserting personal jurisdiction, by applying a 'but for' causation test." Workgroup Tech. Corp. v. MGM Grand Hotel, LLC., 246 F. Supp. 2d 102, 112 (D. Mass. 2003). The arising from inquiry asks "[d]id the defendant's contacts with the Commonwealth constitute the first step in a train of events that result[ed] in the . . . injury." Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287, 291 (D. Mass. 2017) (internal quotation marks omitted) (quoting Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 114 (1st Cir. 1997)).

Lin alleges that TipRanks is subject to personal jurisdiction pursuant to section 3(c) of the Massachusetts long-arm statute because "TipRanks' defamatory act occurred 'in' Massachusetts," which is where the defamatory material was disseminated. [ECF No. 14 at 4–5]. First, the "arising from" clause is satisfied because the online ranking published by TipRanks and allegedly accessed in Massachusetts is a but-for cause of the injury. TipRanks' publication of Lin's erroneous ranking, which was available in Massachusetts, allegedly deterred Massachusetts employers from hiring her, which caused economic loss and damaged her reputation. See, e.g., Roy v. FedEx Ground Package Sys., Inc., No. 3:17-cv-30116, 2018 WL 2324092, at *5 (D. Mass. May 22, 2018) (finding that the "arising from" clause was satisfied where the cause of action stemmed from activities by the defendant occurring in Massachusetts).

Second, "[w]hen business is transacted over a computer network via a Web-site accessed by a computer in Massachusetts, it takes place as much *in* Massachusetts, literally or figuratively, as it does anywhere." Dig. Equip. Corp. v. AltaVista Tech., Inc., 960 F. Supp. 456, 462 (D. Mass. 1997). In addition, "[t]he tort of libel is generally held to occur wherever the offending material is circulated." Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777 (1984). Here, because the defamatory material on TipRanks' website was allegedly accessed or "circulated" in

5

Massachusetts, the act of defamation was committed in Massachusetts within the meaning of section 3(c) of the long-arm statute.[3]

### B. Constitutional Due Process

Once the Court finds that the long-arm statute is satisfied, it must next determine whether it can exercise jurisdiction consistent with the Due Process Clause of the Fourteenth Amendment. Courts may exercise two types of personal jurisdiction under the Fourteenth Amendment: general or specific. "[G]eneral jurisdiction requires affiliations 'so "continuous and systematic" as to render [a person] essentially at home in the forum State.'" Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). In Daimler AG v. Bauman, 571 U.S. 117 (2014), the Supreme Court explained that, with respect to a corporate defendant, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." Id. at 137

---

[3] Lin also argues that sections (a) and (d) of the Massachusetts long-arm statute are met. [ECF No. 14 at 7–9]. Sections (a) and (d) of the long-arm statute allow for the exercise of "personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's":

> (a) transacting any business in this commonwealth, . . . (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . .

Mass. Gen. Laws ch. 223A, § 3(a), (d). The Court has already determined that the long-arm statute is satisfied under section 3(c), but notes that it would likely also be satisfied under section 3(d) because TipRanks' maintenance of an interactive website that is continuously available to Massachusetts residents constitutes a regular solicitation of business in Massachusetts. See Dig. Equip. Corp., 960 F. Supp. at 466–67 (holding that the defendant's website, which was continuously accessible to Massachusetts residents, "plainly solicits business in Massachusetts.").

6

(internal quotation marks and citation omitted).  Here, TipRanks is at home in Israel, not Massachusetts, thus precluding a finding of general jurisdiction.

The jurisdictional inquiry therefore requires a finding that this Court can exercise specific personal jurisdiction over TipRanks.  "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities."  Swiss Am. Bank, Ltd., 274 F.3d at 618 (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).  For the Court to have specific jurisdiction over TipRanks consistent with the Due Process Clause, Lin must demonstrate that each of three conditions is satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 60 (1st Cir. 2002) (quoting Foster-Miller, Inc., 46 F.3d at 144).

1. Relatedness

To satisfy the relatedness requirement, "the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities."  Foster-Miller, Inc., 46 F.3d at 144.  "The relatedness standard is a 'flexible, relaxed standard,' which focuses on the 'nexus between the defendant's contacts and the plaintiff's cause of action.'"  Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007) (first quoting Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994), then quoting Ticketmaster-N.Y., 26 F.3d at 206).  In tort cases, where the defendant causes the plaintiff to suffer an injury in the forum state, the relatedness requirement may be satisfied even if the defendant was not physically present there.  See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 10 (1st Cir. 2009) (noting that a defendant "need not be physically present in

7

the forum state to cause injury" (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005))). The requirement "falls between proximate and 'but for' causation, with foreseeability shaping most relatedness determinations." Micheli v. Techtronic Indus., No. 11-cv-10503, 2012 WL 6087383, at *9 (D. Mass. Mar. 1, 2013) (citing Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715–16 (1st Cir. 1996)).

Here, for the reasons discussed supra, Lin's underlying claim arises out of TipRanks' forum-state activity of disseminating its website and the website's content in Massachusetts. See Dig. Equip. Corp., 960 F. Supp. at 468 (finding that the underlying claims arose directly from the defendant's forum-state activities where it maintained a website that could be accessed by Massachusetts citizens, which resulted in a tort in Massachusetts).

### 2. Purposeful Availment

The Court must next determine whether TipRanks' in-state contacts "represent a purposeful availment of the privilege of conducting activities in the forum state." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 66 (D. Mass. 2001). For TipRanks to have purposefully availed itself of the privilege of conducting activities in Massachusetts, its contacts with Massachusetts must be voluntary, so that "jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state" Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 245 (D. Mass. 2012) (quoting Weinberg v. Grand Circle Travel, LCC, 891 F. Supp. 2d 228, 246 (D. Mass. 2012)), and foreseeable, such that it should "reasonably anticipate being haled into court" in Massachusetts, Prairie Eye Ctr., 530 F.3d at 28 (quoting Adelson, 10 F.3d at 50).

"In cases involving interactions through a website that is operated from outside the forum state but that residents in that state can access, the focus of the analysis has been on this 'purposeful availment' requirement." Media3 Techs., LLC v. CableSouth Media III, LLC, 17 F.

Supp. 3d 107, 111 (D. Mass. 2014). The relevant question for courts is: "[d]oes a website owner purposefully avail itself of conducting business in Massachusetts when its website is accessed in Massachusetts or even interacts with Massachusetts residents?" Sportschannel New England Ltd. P'ship v. Fancaster, Inc., No. 09-cv-11884, 2010 WL 3895177, at *5 (D. Mass. Oct. 1, 2010). Although the traditional test has measured the level of interactivity of a given website (in other words, the extent to which a user can exchange information with the site owner), virtually every website today is moderately interactive, which necessarily changes the analysis. Id. at 6. For example, almost all websites have a "contact us" page or ask users to "register" by providing their contact information. Id. "If virtually every website is now interactive in some measure, it cannot be that every website subjects itself to litigation in any forum . . . . Interactivity alone cannot be the linchpin for personal jurisdiction." Id. This Court agrees that "[m]ere interactivity is not enough. Something more is required." Id. (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). Otherwise "the simple fact that virtually every business now has a website would eviscerate the limits on personal jurisdiction over out-of-state defendants." Media3 Techs., LLC, 17 F. Supp. 3d at 112; see, e.g., Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 35–36 (1st Cir. 2010); BroadVoice, Inc. v. TP Innovations LLC, 733 F. Supp. 2d 219, 224–27 (D. Mass. 2010); Back Bay Farm, LLC v. Collucio, 230 F. Supp. 2d 176, 185 n.10 (D. Mass. 2002).

In Cossaboon v. Maine Medical Center, 600 F.3d 25 (1st Cir. 2010), the First Circuit provided guidance on the "something more" analysis. Cossaboon, 600 F.3d at 35. Cossaboon addressed the question of whether an interactive website, located outside the forum state and directed at residents of every state, may on its own satisfy the purposeful availment prong. Id. at 35–36. The court found that, when considering what "more" is required to support the exercise

of personal jurisdiction based on website activity, courts should "focus[] on the extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through its website." Id.

To establish purposeful availment based on the level of commercial activity "there must be evidence that the defendant . . . directly target[ed] its web site to the state, knowingly interact[ed] with residents of the forum state via its web site, or through sufficient other related contacts." Toys "R" Us, Inc. v. Step Two, 318 F.3d 446, 454 (3d Cir. 2003); see also Media3 Techs., LLC, 17 F. Supp. 3d at 112 (relying in part on Toys "R" Us, Inc. as a basis for determining if website met purposeful availment requirement); see also Venture Tape Corp. v. McGills Glass Warehouse, 292 F. Supp. 2d 230, 232 (D. Mass. 2003) (same); see, e.g., Morphotrust USA, LLC v. Identrix, LLC, No. 16-cv-10074, 2016 WL 3512131, at *7 (D. Mass. June 21, 2016) (finding that where the defendant knows that the target of its allegedly wrongful conduct is located in Massachusetts, the purposeful availment prong is satisfied).

Here, the Court finds that the purposeful availment requirement is not met. Although there is a commercial element to TipRanks' website because users can sign up for a subscription service, and TipRanks may therefore derive some revenue from Massachusetts, see [ECF No. 14 at 10], its website does not target Massachusetts residents directly. Rather, TipRanks' website is available to anyone with internet access and contains content that is no more likely to solicit customers in Massachusetts than anywhere else. Additionally, TipRanks' subscription service is an ancillary feature on its website, which primarily serves to provide information. These facts suggest that what contacts TipRanks does have with Massachusetts are simply "random, isolated, or fortuitous." Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995).

Lin contends that "TipRanks' interactive website is purposefully directed at Massachusetts because its focus on U.S. financial analysts, U.S. testimonials, and U.S. currency is unambiguously designed to attract business in the United States, including Massachusetts." [ECF No. 14 at 12]. These facts, however, do not demonstrate that the website is targeted specifically at Massachusetts. See Toys "R" Us, 318 F.3d at 454 (holding that "the mere operation of a commercially active web site should not subject the operator to jurisdiction anywhere in the world"). The Court also disagrees with Lin's argument that TipRanks' intent that its website enter Massachusetts is "inferred from its ranking of Massachusetts analysts in particular." [ECF No. 14 at 12]. The geographic location of analysts listed on the website is not apparent by simply visiting the site; it can only be ascertained when searching for these analysts by name with another source.

Although Lin directs the Court to Calder v. Jones, 465 U.S. 783 (1984), to support its personal jurisdiction analysis, [ECF No. 14 at 14], Calder is inapposite. In Calder, an editor and a writer for the National Enquirer, both of whom were residents of Florida, were sued in California for libeling Shirley Jones, a California actress. 465 U.S. at 789–90. The offending article involved Jones' California activities; the story was drawn from California sources; and the brunt of the harm was felt in California. Id. In upholding the exercise of personal jurisdiction over the defendants, the Supreme Court pointed to the fact that the National Enquirer had its largest circulation in California. Id. Jurisdiction properly could be asserted over the reporters because the defendants had aimed an act at the forum state, knew the act would likely have a devastating effect, and knew the injury would be felt in the forum state, where Jones lived and worked and in which the National Enquirer had its largest circulation. Id.

11

Other courts have been hesitant to apply Calder when considering the jurisdictional consequences of internet-based defamation. See, e.g., Pierson v. Nat'l Inst. for Labor Relations Research, No. 15-cv-11049, 2016 WL 6093490, at *7 (N.D. Ill. Oct. 17, 2016) (finding that the maintenance of a website and the fact that an individual from Illinois may have read defendants' post did not establish that defendants' alleged tortious conduct was expressly aimed at Illinois); Fertel v. Davidson, No. 13-cv-2922, 2013 WL 6842890, at *4 (D. Md. Dec. 18, 2013) (concluding that because defendant's posts were not directed at Maryland, they could not form the basis for personal jurisdiction); Gorman v. Jacobs, 597 F. Supp. 2d 541, 548 (E.D. Pa. 2009) (holding that for a court to exercise personal jurisdiction based on the use of a website, something about the website must suggest that residents of the forum state are the target audience).

Here, Lin has not affirmatively shown that TipRanks intentionally defamed her in order to cause injury in Massachusetts, nor was the website aimed at Massachusetts beyond the fact "that it could be accessed by Massachusetts residents (along with the rest of the world)." See BroadVoice, Inc., 733 F. Supp. 2d at 226. This situation is distinct from Calder, where the defendant's "intentional, and allegedly tortious actions were expressly aimed at [the forum-state.]" Calder, 465 U.S. at 789. Additionally, Lin offers no evidence that any prospective Massachusetts employer ever accessed the contents of the website or purchased a TipRanks subscription. See id. at 789–90; see also Noonan v. Winston Co., 135 F.3d 85, 91 (1st Cir. 1998) ("Just as widespread circulation of a publication indicates deliberate action, thin distribution may indicate a lack of purposeful contact."). Lastly, TipRanks does not offer any services in Massachusetts, owns no property in Massachusetts, has no employees in Massachusetts, and is otherwise unrelated to the forum. See Media3 Techs., LLC, 17 F. Supp. 3d at 112.

3. Reasonableness

Even if Lin could satisfy the purposeful availment prong, the reasonableness prong also is not met. The First Circuit has identified the following "Gestalt factors" to guide the reasonableness inquiry: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Pritzker, 42 F.3d at 63–64 (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)).

With respect to the first factor, the defendant's burden of appearing, the Court finds that the burden on TipRanks would not be significant. Defending an action in a foreign jurisdiction "is almost always inconvenient and/or costly, . . . [and] this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Id. at 64. Because TipRanks does not allege anything "special or unusual" about its situation, this factor does little to undermine the reasonableness of exercising personal jurisdiction over TipRanks in this case. See id. (noting that "[i]n the modern era, the need to travel . . . creates no especially ponderous burden").

The second factor, Massachusetts' interest in hearing the suit, weighs against exercising personal jurisdiction. "As the Supreme Court has explained, '[a] State generally has a "manifest interest" in providing its resident[s] with a convenient forum for redressing injuries inflicted by out-of-state actors.'" Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 40 (1st Cir. 2016) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985)). The First Circuit has indicated that "[t]he purpose of [this] inquiry is not to *compare* the forum's

13

interest to that of some other jurisdiction, but to determine the extent to which the forum *has* an interest." Foster-Miller, 46 F.3d at 151. Here, the Commonwealth's interest is diminished by the fact that Lin no longer maintains a residence in Massachusetts and has failed to allege any facts demonstrating that TipRanks has conducted a significant amount of business in Massachusetts or otherwise implicated Massachusetts citizens. See Saeed v. Omex Sys., Inc., No. 16-cv-11715, 2017 WL 4225037, at *7 (D. Mass. Sept. 22, 2017); see also N. Light Tech. v. N. Lights Club, 97 F. Supp. 2d 96, 107 (D. Mass. 2000) (finding that Massachusetts' interest in hearing the suit weighed in favor of the plaintiff who was located in Massachusetts).

The third factor, the plaintiff's convenience, favors Lin. "[A] plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle, 70 F.3d at 1395. Even though Lin no longer resides in Massachusetts, the Court acknowledges the inconvenience that might result from Lin having to bring suit in Israel. See, e.g., Nowak, 94 F.3d at 718 (weighing the third factor in favor of exercising personal jurisdiction where the plaintiff was a Massachusetts resident and would likely have difficulty navigating the Hong Kong legal system and would also likely find litigating in Hong Kong to be "economically onerous").

The fourth factor, the judicial system's interest in obtaining the most effective resolution of the controversy, weighs against the exercise of personal jurisdiction or is neutral. This factor considers whether the Court's intervention would provide efficient or effective relief. This district has found that litigating in the forum state would not provide effective relief when necessary evidence and witnesses were located outside of the forum. Mueller Sys., LLC v. Robert Teti & Itet Corp., 199 F. Supp. 3d 270, 279–80 (D. Mass. 2016). As TipRanks notes, Lin lives outside of Massachusetts and "is silent about the location of the alleged employers who

14

purportedly refused to hire her . . . ." [ECF No. 11 at 12]. Thus, it is possible that "no witnesses or documents relevant to the suit are located in Massachusetts." Id. Even assuming that some evidence or witnesses are in Massachusetts, this does little to change the analysis, particularly when the defendant and plaintiff are located outside of the state. The fifth factor concerns the social policy considerations of exercising personal jurisdiction. In this case, the substantive social policy at issue is the assertion of personal jurisdiction in defamation cases based upon internet activities and the resulting burden of forcing businesses with websites to litigate in foreign jurisdictions. This factor weighs against Lin because "it would hale [TipRanks] into court in a distant forum merely because its website is accessible in every state." Photographic Illustrators Corp. v. A.W. Graham Lumber, LLC, 196 F. Supp. 3d 123, 132–33 (D. Mass. 2016). As TipRanks indicates, "[a]lthough Massachusetts has an interest in protecting its residents from defamatory speech, [Lin] is not a Massachusetts resident, and Israel has an interest in protecting TipRanks—a citizen of Israel—from being subjected to lawsuits in far flung jurisdictions based on conduct that occurred entirely in Israel." [ECF No. 11 at 12]. In the same vein, "[a]lthough the concept of long-arm jurisdiction must adjust as technological advances render blurry the boundaries between the states, we must heed the warning that it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts." Sawtelle, 70 F.3d at 1395–96 (internal quotation marks and citations omitted).

On balance, the five Gestalt factors slightly favor a finding that the Court's exercise of personal jurisdiction in this action would not be reasonable or are neutral. Even if neutral, their weight is not sufficient to persuade the Court that it would be reasonable to litigate this action here.

## IV. CONCLUSION

Accordingly, TipRanks' motion to dismiss for lack of personal jurisdiction [ECF No. 10] is GRANTED.

**SO ORDERED.**

November 21, 2019 /s/ Allison D. Burroughs  
ALLISON D. BURROUGHS  
U.S. DISTRICT JUDGE